UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

JOHN B. SPEIGNER, )
)
    Plaintiff, )
)
vs. ) CV-00-PT-1878-M
)
OFFICE OF WORKERS' )
COMPENSATION PROGRAMS et al., )
)
    Defendants. )

# MEMORANDUM OPINION

This cause comes to be heard on defendants' Motion for Summary Judgment, filed on October 3, 2000.

## FACTS

The plaintiff is a former postal worker who injured his back in the performance of his job in 1985. Defendant Office of Workers' Compensation Programs ("OWCP"), finding that he had suffered a compensable injury, awarded payment of disability benefits under the Federal Employees' Compensation Act ("FECA"). The plaintiff continued to receive benefit payments until 1993. In that year, a physician examining the plaintiff concluded that the plaintiff could return to light-duty work. The plaintiff returned to the post office as a light-duty clerk on June 21, 1993. After he returned to work, the OWCP, determining that he no longer had a loss of wages resulting from the 1985 injury, terminated its payment of the compensation benefits. Neither party claims that the plaintiff challenged this particular act of termination.

Subsequently, on August 25, 1993, a different physician concluded that the plaintiff

needed to reduce his work hours to four hours a day. A few days later, the plaintiff discontinued work altogether and claimed four hours per day of wage-loss benefits from early to late August, a full eight hours per day of wage-loss benefits from September 1, 1993 to September 28, 1993, and, again, four hours per day of wage loss benefits from September 29, 1993 to October 1, 1993. The OWCP approved the plaintiff's claim in a letter dated November 12, 1993, and sent the plaintiff a "temporary total disability" benefit check. However, the November 12 letter emphasized that the check represented benefits for a temporary disability, and that to receive continuous total disability compensation, the plaintiff needed to "medically document a worsening of [his] accepted medical conditions . . . to the point that [he] cannot perform the modified duties of [his] job." The letter further stated that "[s]ince [the plaintiff's physician] has reduced your hours to 4 per day, you must work 4 hours per day. A detailed narrative is required to document why you cannot work 8 hours per day, before any further compensation will be paid."

      The plaintiff thereafter applied for "recurrence" benefits, which were denied on February 8, 1994, on the grounds that he had failed to show a change in the nature and extent of his job requirements or a change in his condition. In this decision, the OWCP allocated the burden of proving a change in condition to the plaintiff. The plaintiff submitted additional evidence and requested a reconsideration of the denial. In a decision dated June 10, 1994, the OWCP declined to modify its prior decision because it found that the plaintiff had not carried his burden of proof of a recurrence of total disability. The plaintiff then requested a review of the decision by an OWCP hearing representative. After a hearing held on March 29, 1995, the hearing representative affirmed the OWCP's wage-earning determination, but remanded the recurrence claim for further evidentiary development. After a period of time during which additional

evidence was developed and submitted, an OWCP senior claims examiner denied the plaintiff's request for modification on November 20, 1995.

On November 22, 1995, the plaintiff appealed the decision to the Employee's Compensation Appeals Board ("ECAB"), the final level of administrative appeal. The plaintiff and the OWCP submitted medical reports that largely agreed on the plaintiff's inability to perform his light-duty job. Although the plaintiff argued strenuously against it, the ECAB remanded the plaintiff's claim for further medical evidentiary development because the director of the OWCP had conceded that its initial determination of the plaintiff's wage-earning capacity was incorrect. The OWCP subsequently required the plaintiff to submit to an examination by a third physician, whose diagnosis directly conflicted with those of the two initial physicians. Based on this third physician's diagnosis, specifically, that the plaintiff could perform the duties of the light-duty position, the OWCP again denied the plaintiff's recurrence claim on July 29, 1997. The plaintiff appealed the decision to a hearing examiner, who affirmed the OWCP's decision on October 19, 1998. The plaintiff filed a second appeal to the ECAB on November 12, 1998, which was only recently decided. The decision, dated November 15, 2000, affirmed the OWCP's denial of recurrence benefits.

In addition to availing himself of the administrative appeals process, the plaintiff also filed a complaint against the United States with this court under the Federal Tort Claims Act on January 9, 1997. Later, he amended his complaint to allege that he was deprived of procedural due process. After a failed attempt to amend his complaint a second time to include a due process claim against the OWCP and Secretary of Labor specifically, based upon the delay in the appeals process, the plaintiff voluntarily dismissed his procedural due process claim. Subsequently, the court granted summary judgment to the defendant on the remaining counts, a

decision that was affirmed by the Eleventh Circuit in Speigner v. United States, 177 F.3d 982 (11th Cir. 1999)(unpub.).

The plaintiff filed the instant complaint with this court on July 7, 2000. He claims that he was deprived of his benefits without due process through "undue delays, lack of meaningful appeal process; termination of benefits without a due process hearing; and requirement of Plaintiff to submit to a third medical opinion when there was no disagreement between Plaintiff's treating physician and the second opinion physician chosen by Defendant regarding Plaintiff's total disability." The defendants filed a motion to dismiss on October 3, 2000. That motion was converted into the instant motion for summary judgment.

## ARGUMENT

**Termination of compensation versus denial of compensation**

As an initial matter, the parties dispute the significance of the denial of total disability compensation in 1994. The defendants characterize it as a denial of a new application for new benefits, called "recurrence benefits." The plaintiff characterizes it as a termination of benefits previously granted in the November 12, 1993 letter.

The plaintiff argues that, because the action that the OWCP took was a termination rather than a denial, the OWCP and subsequent review bodies have applied an incorrect standard by requiring the plaintiff to shoulder the burden of proving the recurrence. Instead, the plaintiff contends, the applicable regulation, 20 C.F.R. § 10.110 places on the OWCP the burden to prove cessation of disability or the lack of a casual relationship between the disability and the employment. Section 10.110 requires the OWCP to shoulder this burden of proof "once [it] has accepted a claim and paid compensation . . . . before terminating or reducing compensation . . . ." The plaintiff argues that, when the OWCP paid to him the temporary disability payments, those

4

payments constituted the acceptance of a claim and the payment of compensation necessary to invoke the application of § 10.110. The plaintiff maintains that once the OWCP accepted his temporary disability claim, it had to prove the absence of disability pursuant to § 10.110 before it could refuse to pay further compensation.

The defendants maintain that the only termination in compensation that occurred was the termination of the plaintiff's continuous total disability benefits in June, 1993, to which the plaintiff did not object. The defendants argue that this termination was appropriate pursuant to 20 C.F.R. § 10.124(a), which states that "no further compensation for wage loss is payable once the employee has recovered from the employment injury to the extent that he or she could perform the duties of the position held at the time of the injury, or earn equivalent wages." The defendants contend that after the plaintiff began to receive equivalent wages and stopped receiving total disability compensation, pursuant to § 10.124, he was no longer entitled to disability benefits. Because he lost his entitlement to the benefits, the defendants argue, he does not now have a property interest in the benefits over which he has brought this constitutional claim. The defendants cite to <u>American Manufactureres Mutual Insurance Co. v. Sullivan</u>, 526 U.S. 40 (1999) for the proposition that a claimant does not have a property interest in benefits before he has been determined to be entitled to them. Although the defendants do not explicitly state as much, it is obvious from the foregoing arguments that they do not consider the temporary total disability compensation awarded in the November 12, 1993 letter to be "compensation" within the meaning of § 10.110.

The plaintiff argues that he was entitled to continuing benefits because the OWCP had resumed paying benefits to him with the November 12, 1993 temporary disability letter. The plaintiff cites to 20 C.F.R. § 10.110, quoted above, which states that once the OWCP has

5

accepted a claim and paid compensation, it has the burden to prove either that the disability has ceased, that it was unrelated to the occupational injury, the claimant is only partially disabled, or that its initial decision was incorrect. To the plaintiff, the check that was paid to him pursuant to the November 12, 1993 letter constituted the payment of compensation from an accepted claim. Therefore, argues the plaintiff, he was entitled to receive benefits until the OWCP proved one of the four options in § 10.110, and continues to have a property interest in the benefits.

**Insulation from judicial review**

The defendants next argue that, regardless of whether the OWCP adjudicators correctly assigned the burden of proof, FECA administrative decisions are insulated from judicial review. The defendants rely on 5 U.S.C. § 8128 for the proposition that this court does not have jurisdiction over the plaintiff's claim:

> "(a) The Secretary of Labor may review an award for or against payment of compensation at any time on his own motion or application. The Secretary, in accordance with the facts found on review, may-
> (1) end, decrease, or increase the compensation previously awarded; or
> (2) award compensation previously refused or discontinued.
> (b) The action of the secretary or his designee in allowing or denying a payment under this subchapter is-
> (1) final and conclusive for all purposes and with respect to all questions of law and fact; and
> (2) not subject to review by another official of the United States or by a court by mandamus or otherwise."

<u>The existence of a constitutional claim</u>

The defendants note that the Eleventh Circuit, in <u>Woodruff v. United States</u>, 954 F.2d 634, 644 (11th Cir. 1992), stated that: "Congress decided to preclude judicial review of any question of law or fact that arises under FECA." According to the court, the two possible exceptions to this general rule were "charges that the Secretary violated a clear statutory mandate or prohibition, and to consider constitutional claims." <u>Id.</u> at 639. The defendants argue

6

that, because the OWCP's actions did not amount to a termination of benefits and the administrative process to date concerned only the plaintiff's ability to receive recurrence benefits, the plaintiff's due process claim amounts to no more than a challenge of the OWCP's factual findings and application of FECA law. The defendants contend that this court cannot review the OWCP's decisions in the guise of a constitutional claim because the plaintiff does not have the necessary property interest in the benefits in order to bring a constitutional claim. As stated above, the plaintiff argues that he indeed has a property interest in the benefits and has brought a valid constitutional due process claim through which this court can review the actions of the OWCP.

Violation of a clear statutory mandate or prohibition

Furthermore, the plaintiff argues, the OWCP violated a clear statutory mandate. After the ECAB remanded the claim to the OWCP for further evidentiary development, the OWCP ordered the plaintiff to submit to a third medical examination and relied upon the results of the examination to again deny the plaintiff's benefits. The plaintiff argues that the third examination was "illegal," pursuant to 5 U.S.C. § 8123(a), which states that:

> "An employee shall submit to examination by a medical officer of the United States, or by a physician designated or approved by the Secretary of Labor, after the injury and as frequently and at the times and places as may be reasonably required. The employee may have a physician designated and paid by him present to participate in the examination. If there is disagreement between the physician making the examination for the United States and the physician of the employee, the Secretary shall appoint a third physician who shall make an examination."

According to the plaintiff, because the statute specifically provides for an examination by a third physician in the case of a disagreement between the employee's physician and the OWCP's physician, it precludes the use of a third physician at any other time. The plaintiff has cited to an

administrative decision in which the ECAB found that it was improper for the OWCP to send a claimant to another medical specialist for no other reason than that it disagreed with the diagnosis of the first physician. Carlton L. Owens, 36 ECAB 608 (1985).

The defendants, while not abandoning their argument that the determinations of the OWCP and the ECAB under FECA are insulated from judicial review, argue that the plaintiff's interpretation of 5 U.S.C. § 8123 is incorrect. The defendants contend that by mandating that an employee submit to a medical examination "as frequently and at the times and places as may be reasonably required," the statute allows the OWCP to have the plaintiff examined as many times as it wants to, as long as its requirements are reasonable. The defendants characterize the last sentence of 5 U.S.C. § 8123 as a statutorily-mandated tie-breaker, but argue that it does not affect the OWCP's ability to require the plaintiff to submit to one or more reasonable medical examinations. The OWCP argues that because requiring the plaintiff to submit to another physician in order to get a "second opinion" was expressly authorized by the statute, its actions were not "illegal."[1]

**Res judicata**

The defendant next argues that the plaintiff's claims are precluded by the doctrine of res judicata. According to the defendant, res judicata is applicable because a court of competent jurisdiction entered a prior judgment on the merits of the same cause of action between the plaintiff and a party with whom the instant defendants argue that they have privity, namely, the United States. See NAACP v. Hunt, 891 F.2d 1555, 1560 (11th Cir. 1990). The defendants are referring to the decision issued by Judge Lynwood Smith, in which he allowed the plaintiff to

---

[1] The court agrees with the defendants that the first quoted sentence in § 8123(a) is not conditioned by the third.

voluntarily dismiss his due process claim and granted summary judgment for the United States on the remainder of the plaintiff's claims. The decision was affirmed by the Eleventh Circuit in the unpublished opinion already mentioned. The defendants argue that, although the due process claim was dismissed without prejudice, res judicata still applies because of the broad definition of "cause of action." The defendants note that, in the Eleventh Circuit, causes of action are the same when the underlying events giving rise to the cause of action are "essentially similar." Israel Discount Bank Ltd. v. Entin, 951 F.2d 311, 315 (11th Cir. 1992). The defendants further assert that, because they are being sued in their official capacities as agencies and officers of the United States, they are in privity with the United States, and their interests were adequately represented by the United States itself in the prior action.

    The plaintiff's only response to the defendants' res judicata argument is a brief reference to the fact that, because he voluntarily dismissed his due process claim in the prior action, the claim was neither litigated nor disposed of on its merits. Furthermore, the plaintiff notes that he did not bring the prior action against OWCP or the Secretary of Labor because the district court would not allow him to amend his complaint to add them as parties. The plaintiff addresses neither the defendants' argument that the underlying events giving rise to the prior claim and this claim are "essentially similar" nor the defendants' assertion of privity with the prior defendant, the United States.

    The Eleventh Circuit has stated that "[i]n general, cases involve the same cause of action for purposes of res judicata if the present case 'arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action.'" Entin, 951 F.2d at 315 (quoting Citibank, N.A. v. Data Lease Fin. Corp., 904 F.2d 1498, 1503 (11th Cir. 1991)). The court explained that in order for two causes of action to be the same, they "must 'arise out of the same

transaction or series of transactions.'" Id. (quoting In re Justice Oaks, Ltd., 898 F.2d 1544, 1551 (11th Cir. 1990)). When comparing two causes of actions, a court should "compare the factual issues explored in the first action with the factual issues to be resolved in the second action." Id. A court should look past the form of the actions, to their substance. Id.

In this case, the plaintiff brought the prior action based upon the same lengthy saga of hearings, evidentiary submissions, and appeals that he brings the instant action. Judge Smith's memorandum opinion stated that the plaintiff "claims that the OWCP's refusal to award such benefits amounts to bad faith and deprivation of property without due process of law." Speigner v. United States, Memo Op., CV-97-S-64-M, p. 1 (N.D. Al. August 11, 1998). Although the prior claim was brought under the Federal Tort Claims Act, the underlying nucleus operative facts, as well as the plaintiff's ultimate conclusion– that his benefits had been terminated without due process– is the same for both claims. In the prior case, the district court found that it did not have the authority to review the OWCP's denial of benefits because 5 U.S.C. § 8145 insulated the decision from judicial review. Id. at 6. The Eleventh Circuit affirmed the district court on the grounds contained in the memorandum opinion. Speigner v. United States, 177 F.3d 982 (11th Cir. 1999)(per curiam)(unpub.).

**The due process claim**

The plaintiff brings his due process claim on two grounds, one of which has been rendered moot. The moot claim involved the delay between the plaintiff's second appeal to the ECAB and their final decision. As of the filing of the complaint, over a year had passed since the plaintiff's 1998 appeal. However, the ECAB rendered the delay claim moot by issuing its decision on November 15, 2000.

The only remaining claim is the plaintiff's claim that his benefits were terminated in

violation of due process because he was not given a pre-termination hearing or adequate post-deprivation process. The plaintiff bases this claim on his argument that what the defendants characterize as a denial of "recurrence benefits" was actually the termination of previously-awarded compensation. The plaintiff argues that the post-deprivation process was inadequate because the adjudicators, in the "administrative merry-go-round" of the past five years, continuously placed on his shoulders a burden of proof that should have rested with the OWCP. The plaintiff also claims that the post-deprivation process was inadequate because he was forced to submit to the examination of a third physician, upon whose diagnosis the OWCP relied to deny his benefits, even though the plaintiff had previously been examined by an OWCP physician who agreed with the diagnosis of the plaintiff's physician. The plaintiff claims that the process that he has received thus far is a mere facade.

## CONCLUSION

The court concludes that for one or more reasons asserted by the defendants, that is, res judicata, bar of judicial review, or absence of statutory or Constitutional violation, the defendants' motion is due to be granted.

This 11th day of December 2000.

**ROBERT B. PROPST**

**SENIOR UNITED STATES DISTRICT JUDGE**